IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 22, 2001 Session

## STATE OF TENNESSEE v. STEVE HILLIARD

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 224113 and 224114     Douglas A. Meyer, Judge**

---

**No. E2000-02819-CCA-R9-CD**
**August 17, 2001**

---

The Defendant was indicted for one count of extortion and one count of theft of property over $1000, both Class D felonies. The Defendant requested pretrial diversion, which the prosecutor denied. The Defendant then filed a writ of certiorari to the trial court alleging an abuse of prosecutorial discretion. The trial court affirmed the prosecutor's decision. The Defendant now appeals, arguing that the trial court erred in ruling that the prosecutor did not abuse his discretion in denying pretrial diversion. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Jerry H. Summers, Chattanooga, Tennessee; and Gary D. Gerbitz, Chattanooga, Tennessee, for the appellant, Steve Hilliard.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; William H. Cox, III, District Attorney General; C. Parke Masterson, Jr., Assistant District Attorney General; and Rodney C. Strong, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION

FACTS

The victim, Dixon Gilbert Brackett, testified that on July 21, 1998 someone broke into her car and stole various items, including a laptop computer. Brackett reported the theft to police and described her computer by type, model and serial number. Brackett testified that on August 21,

1998, the Defendant called her.[1] The Defendant was the manager of Household Pawnshop. According to Brackett, the Defendant claimed that he had a laptop computer that belonged to her. The Defendant told Brackett that he would return the computer if she would pay him one hundred and forty dollars. Brackett testified that the Defendant told her that she could go through the court system to get the computer back, but that would be "inefficient." Brackett testified that she was suspicious of the Defendant because of his "tone of conversation" which she described as "aggressive." After telling the Defendant that she used the computer for her work, the Defendant told her that she could come down to the pawn shop and copy the files off of the computer. Following her conversation with the Defendant, Brackett spoke to a police officer friend who advised her not to go to the pawn shop. Instead, Brackett contacted Sergeant Alan Chance of the Chattanooga Police Department and they went to the pawn shop together. Once there, Chance signed a document indicating that he had received the computer and then gave it to Brackett.

Sergeant Chance testified that he is the detective in charge of the pawn shop unit for the Chattanooga Police Department. According to Chance, he became involved in this case when Brackett made a report regarding the phone conversation she had with the Defendant. As requested by the State, Chance wrote a memo in which he discussed his past experiences with the Defendant and Household Pawn. In the memo, Chance indicated that he had previously had conversations with a man named Anthony Brislin who was a manager at Value Plus Pawn Number 1, a sister store owned by Standon, Incorporated. According to Chance, Brislin provided him with information regarding Brackett's computer, as well as other stolen property involving the Defendant. One other instance noted in the memo involved an out-of-town company that paid the Defendant to have their property returned. Chance testified that Barbara Lawson, manager of the sister store to the one the Defendant managed, told him that the Defendant asked her to "clear the memory of the laptop computer in an effort to hide the identity of the owner." Chance stated that the Defendant had been repeatedly warned about settling the recovery of stolen property with victims.

The Defendant testified that he had been the store manager for Household Pawn for nine years. The Defendant testified that Household Pawn purchased Brackett's computer for forty dollars. According to the Defendant, the computer was held in storage for the requisite twenty days; it was then set aside because the Defendant wanted to consult with another employee, Anthony Brislin, about pricing. The Defendant testified that he never had any contact with Brackett during the twenty days that the computer was in storage. The Defendant stated that Brislin told him that the computer was worth much more than forty dollars, so he, along with his supervisor and the owner of the company, decided to do "the right thing" and "return it to the rightful owner."

The Defendant testified that he asked Brislin to determine who the owner was by going through the computer. Brislin complied and found Dixon Brackett's name. The Defendant testified that he could not find Brackett's number in the phone book. Realizing from the files contained on the computer that Brackett used the computer for business, the Defendant testified that he contacted

---

[1]Brackett made notes regarding the conversation, which she gave to the police.

the Hamilton County Clerk's Office and the Chattanooga City Clerk's Office to see if Brackett had a business license. Having no success at locating Brackett, the Defendant then called the Tennessee Department of Revenue, the clerks' offices in Catoosa County, Georgia and Walker County, Georgia. Still unable to locate Brackett, the Defendant testified that contacted David Rodery, a Hamilton County detective, and Tommy Kennedy, a Chattanooga City detective. The Defendant testified that he was finally able to locate Brackett by searching through the computer, finding her company name, Southern Surveyors, and looking that name up in the phone book. According to the Defendant, he called Brackett and left a message, and she called him back. The Defendant testified that he told Brackett that she could bring a detective with her to retrieve the computer. The Defendant stated that he never requested any money for the computer.

At the conclusion of the hearing, the trial court ruled that the decision of the prosecutor denying the Defendant pretrial diversion was not an abuse of prosecutorial discretion. The trial court noted that the Defendant contacted the victim, asked another employee to remove the victim's name from the computer, and demanded money from the victim before he would give her computer back. The trial court went on to state the following:

> Well, there's no question that . . . [the Defendant] is probably a good man, has an excellent reputation, he's got many favorable letters and all in there, but [the Defendant] did not handle this situation right and he did not tell the truth on the witness stand in the manner in which he handled this.

## ANALYSIS

The Defendant argues that the trial court erred in ruling that the prosecutor did not abuse his discretion in denying him pretrial diversion. Specifically, the Defendant argues that the District Attorney General acted arbitrarily and capriciously in denying the Defendant pretrial diversion.

Pretrial diversion allows a district attorney general to suspend prosecution for a period of up to two years against a defendant who meets certain statutory requirements. See Tenn. Code Ann. § 40-15-105(a)(1)(A). In order to qualify for pretrial diversion, the defendant must not have previously been granted diversion under this statute; must not have a prior misdemeanor conviction for which a sentence of confinement was served or a prior felony conviction within a five-year period after completing the sentence or probationary period for such prior conviction; and must not be seeking diversion for a Class A or B felony, a sexual offense,[2] driving under the influence, or vehicular assault. Id. § 40-15-105(a)(1)(B)(i)(a)-(c). Such eligibility does not presumptively entitle a defendant to pretrial diversion, but rather places such a decision within the discretion of the district attorney general so long as the defendant is statutorily qualified. State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999).

---

[2] Statutory rape is not included as a "sexual offense" for which a defendant would be disqualified from seeking pre-trial diversion. See Tenn. Code Ann. § 40-15-105(a)(1)(B)(ii)(a)-(h).

It is the defendant's duty to demonstrate suitability for pretrial diversion. State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989); State v. Winsett, 882 S.W.2d 806, 809-10 (Tenn. Crim. App. 1993). However, this requirement does not relieve the prosecutor of his or her duty to consider and articulate all the relevant factors. Curry, 988 S.W.2d at 157. The district attorney is required to consider all relevant factors when determining whether or not to grant pretrial diversion. State v. Carr, 861 S.W.2d 850, 855 (Tenn. Crim. App. 1993). The Tennessee Supreme Court has outlined the criteria that should be considered by the prosecutor in granting or denying pretrial diversion:

> When deciding whether to enter into a memorandum of understanding under the pretrial diversion statute a prosecutor should focus on the defendant's amenability to correction. Any factors which tend to accurately reflect whether a particular defendant will or will not become a repeat offender should be considered. Such factors must, of course, be clearly articulable and stated in the record in order that meaningful appellate review may be had. Among the factors to be considered in addition to the circumstances of the offense are the defendant's criminal record, social history, the physical and mental condition of a defendant where appropriate, and the likelihood that pretrial diversion will serve the ends of justice and the best interest of both the public and the defendant.

State v. Hammersley, 650 S.W.2d 352, 355 (Tenn. 1983); see also Curry, 988 S.W.2d at 157.

Where pretrial diversion is denied by the district attorney, the factors and evidence considered in making the decision must be clearly set forth in writing along with the weight accorded to each factor. Pinkham, 955 S.W.2d at 960; Winsett, 882 S.W.2d at 806. The district attorney general must do more than abstractly state that he or she has considered each of the factors. Herron, 767 S.W.2d at 156. Rather, the factors must be "clearly articulable and stated in the record." Hammersley, 650 S.W.2d at 355. Failure to consider and articulate all of the relevant factors constitutes an abuse of discretion. See Curry, 988 S.W.2d at 157-58.

A defendant who has been denied pretrial diversion by the district attorney has the right to petition for a writ of certiorari to the trial court for an abuse of prosecutorial discretion. Tenn. Code Ann. § 40-15-105(b)(3). Although presumptively correct, a trial court may overrule a district attorney's denial of pretrial diversion where there has been an abuse of discretion. However, the trial judge cannot simply substitute his or her own judgment for that of the district attorney. State v. Watkins, 607 S.W.2d 486, 488 (Tenn. Crim. App 1980). To show prosecutorial abuse of discretion, the record must lack any substantial evidence to support the denial of pretrial diversion. Curry, 988 S.W.2d at 158.

The legislature has vested the authority to prosecute a case or divert it with the prosecutor rather than the court. See Tenn. Code Ann. § 40-15-105; Carr, 861 S.W.2d at 858. In reviewing the prosecutor's denial of diversion, the trial court must look at all the relevant factors to determine whether the prosecutor considered them, and if he or she did not, to determine whether pretrial diversion is appropriate. Herron, 767 S.W.2d at 156; Carr, 861 S.W.2d at 858. In reviewing whether the prosecutor has abused his or her discretion regarding diversion, the trial court must undertake

the same process required of the prosecutor in considering and weighing the relevant factors. <u>Herron</u>, 767 S.W.2d at 156.

In determining whether to grant the Defendant pretrial diversion in this case, the prosecutor stated that he reviewed and considered the following: (1) the facts of this particular case, (2) the Pawnbrokers Act of 1988, (3) the Defendant's pretrial diversion application, (4) letters of support from friends and acquaintances of the Defendant, (5) information provided by Detective Alan Chance regarding prior dealings with the Defendant and his employer, Household Pawn, and (6) an interview with the victim.

The district attorney general clearly articulated the following reasons for denying the Defendant pretrial diversion: (1) that the Defendant should be held to a higher standard of conduct because the pawn shop business "has a direct impact on the ability of the police and community to control theft and burglary by the quick recovery of stolen property," (2) that the Defendant was not amenable to rehabilitation, as evidenced by his failure to heed prior warnings regarding his conduct, (3) the interest of the public in preventing the illegal trafficking in stolen goods, (4) the deterrent factor to the Defendant and others in the pawn shop business from profiting from the crimes of others, and (5) that the granting of diversion would hamper law enforcement because pawnshop employees must be willing to assist police in finding and identifying stolen property.

The district attorney general also noted certain factors weighing in the Defendant's favor. The prosecutor acknowledged that the Defendant had no prior record, stable employment and a stable marital history. The prosecutor stated that the Defendant received positive reports from his friends and acquaintances. However, the prosecutor ultimately denied the Defendant pretrial diversion. Because the prosecutor clearly articulated the relevant factors that were considered, we conclude that there was no abuse of discretion. As such, the trial court properly ruled that the prosecutor's decision to deny pretrial diversion was not an abuse of prosecutorial discretion.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE

-5-